**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KENTES WEST, #K82893, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-00224-SMY |
| | ) | |
| SCOTT EBERS, | ) | |
| ROBERT W. RHOADES, | ) | |
| ZACKARY CONNOR, | ) | |
| RYAN RAMSEY, | ) | |
| KEVIN TILLEY, | ) | |
| SYLVESTER LAMBERT, | ) | |
| JESSICA ARMBRUSTER,[1] | ) | |
| MARK HANKS, | ) | |
| MORGAN GIACOMO, and | ) | |
| WARDEN OF MENARD | ) | |
| CORRECTIONAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kentes West filed this action pursuant to 42 U.S.C. § 1983 against nine defendants who allegedly retaliated against him for filing a lawsuit and grievances by denying him medication and issuing him false disciplinary tickets at Menard Correctional Center. (Doc. 19). Defendants now move for summary judgment based on Plaintiff's failure to exhaust his administrative remedies before bringing suit in compliance with the Prison Litigation Reform Act (PLRA), *see* 42 U.S.C. § 1997e(a). (Doc. 56 and 61). For the following reasons, the motions are **DENIED**.

### BACKGROUND

Plaintiff Kentes West is an inmate in the custody of the Illinois Department of Corrections (IDOC) and filed this action while he was incarcerated at Menard Correctional Center. He filed a

---

[1] Jessica Armbruster is formerly known as Jessica Huffman.

1

Complaint (Doc. 1) on January 25, 2023 and an Amended Complaint (Doc. 19) on May 18, 2023.

Plaintiff makes the following allegations in the Amended Complaint, as reflected in the Merit Review Order (Doc. 25): Menard officials subjected Plaintiff to the unauthorized use of force and denied him medication in retaliation for filing a lawsuit against Lieutenant Ebers. (Doc. 25, p. 2). To obtain his prescription medication, Plaintiff was required to wear handcuffs during med line. The only exception from this requirement was for Plaintiff's "crush and float" medication for nerve pain. Before receiving all other medications, Menard officials would cuff Plaintiff so tightly that he suffered pain and numbness in his wrists, hands, and arms for hours after med line ended. *Id.*

Plaintiff complained to Lieutenant Ebers in July 2022. He told the officer that he regularly declined medications that required cuffs because it was so painful. Lieutenant Ebers said that Plaintiff should be happy there was nothing else to complain about, given that he named the lieutenant in a prior lawsuit. *Id.* Hoping to avoid the issues posed by Lieutenant Ebers, Plaintiff requested a change of medication times to a shift that Lieutenant Ebers and Nurse Giacomo did not work. The request was denied. *Id.*

From July 12-14, 2022, Lieutenant Ebers instructed prison guards to cuff Plaintiff for all medication, including his "crush and float" medication. Plaintiff ended up declining or receiving no medication. After this, Plaintiff only received medication on days that Lieutenant Ebers was not working. Sergeant Rhoades eventually made sure Plaintiff was denied medication on all other days, too. Plaintiff was ultimately denied medication even when he offered to cuff up for it. Defendants Ebers, Rhoades, Connor, Ramsey, Tilley, Smith, Lambert, and Morgan all denied him medication. Nurse Giacomo became so accustomed to this that she stopped packing it for him. *Id.* Defendants Armbruster, Hanks, and Rhoades also issued him false disciplinary tickets. *Id.*

Following preliminary review of the Amended Complaint, the Court allowed Plaintiff to proceed with two claims:

> **Count 1:** First Amendment claim against Defendants Ebers, Rhoades, Connor, Ramsey, Tilley, Smith, Lambert, and Morgan for denying Plaintiff access to his medications from July through October 2022, in retaliation for filing a lawsuit against staff at Menard.

> **Count 2:** First Amendment claim against Defendants Armbruster, Hanks, and Rhoades for issuing Plaintiff five disciplinary tickets in September and October 2022, in retaliation for filing grievances or complaints against staff at Menard.

(Doc. 25). The Court dismissed four other claims against these defendants. *Id.*

### MOTIONS FOR SUMMARY JUDGMENT

Defendant Morgan Giacomo (Doc. 56) and Defendants Scott Ebers, Robert Rhoades, Zachary Connor, Ryan Ramsey, Kevin Tilley, Sylvester Lambers, Jessica Armbruster, and Mark Hanks (Doc. 61)[2] seek dismissal of the claims against them, arguing that Plaintiff submitted each of four grievances[3] directly to the Administrative Review Board (ARB) without first exhausting remedies at the institutional level. In support of their motions, Defendants include copies of each grievance and the ARB's response, along with other grievance records and the grievance log. Defendant Giacomo filed these documents with a supporting subpoena.[4] (Doc. 57-1, pp. 1-4; Doc. 57-2, pp. 1-6).

In response, Plaintiff argues that the institutional grievance process was unavailable to him. Specifically, Plaintiff asserts that he filed numerous grievances at the prison, but received no receipt, no response, and no copy of his grievances before filing this lawsuit. He began filing each

---

[2] The Warden of Menard Correctional Center is named in an official capacity only and did not participate in the summary judgment briefing.

[3] The two motions refer to five grievances in total.

[4] No other defendants supported their motion with an affidavit, declaration, or subpoena. *See* FED. R. CIV. P. 56; SDIL-LR 56.1. However, they relied on the same documents as Defendant Giacomo (*see* Doc. 57, 57-1, 57-2), who filed the grievance materials along with a subpoena.

grievance with the institution and ARB at the same time. When the ARB returned some of them unprocessed, Plaintiff re-filed them at the institutional level, but again received no response. Plaintiff filed a declaration in support of his responses. (Doc. 63, pp. 23-24; Doc. 67, pp. 54-55).

## FACTUAL FINDINGS

Plaintiff was an inmate at Menard Correctional Center at the time his claims arose in July 2022 and at the time he filed this lawsuit in January 2023. In the First Amended Complaint, Plaintiff acknowledged that Menard had a grievance procedure, and he had access to it during his incarceration. (Doc. 19, p. 9; Docs. 57-1 and 57-2). Plaintiff also states that facts related to his claims were "presented in the grievance procedure." (Doc. 19, p. 9). The following grievances pertain to Plaintiff's allegations that he was denied medications and/or issued false disciplinary tickets in retaliation for filing a lawsuit against Lieutenant Ebers (*see* Docs. 57-1, 57-2, 61-1, and 61-2):

### Grievance #1: July 11, 2022

On July 11, 2022, Plaintiff submitted a grievance directly to the ARB stating that an unidentified sergeant and lieutenant told him that he would not be receiving his medication going forward. (Doc. 61-1, pp. 31-33). He also referred to "Nurse K." *Id*. The ARB returned the grievance to Plaintiff because it did not include a copy of the original grievance, counselor response, grievance officer response, or COA recommendation. *Id*.

### Grievance #2: July 12, 2022

On July 12, 2022, Plaintiff submitted a grievance directly to the ARB regarding the denial of his medications. (Doc. 57-1, pp. 38-39; Doc. 61-1, pp. 26-30). He included no counselor response, no grievance officer response, and no CAO recommendation. (Doc. 57-1). The ARB received the grievance on July 22, 2022 and returned it to Plaintiff. *Id*. at 35. Plaintiff then

4

submitted it to the counselor.  (Doc. 57-2, pp. 53-54, 56).  Health Care Unit (HCU) Administrator

Angela Crain responded and stated that Plaintiff refused all medication except Neurontin on

July 12, 2022.  *Id*. at 55.  The grievance officer recommended mooting the grievance because the

issue was addressed.  (Doc. 57-2, pp. 51-52).  The CAO concurred.  *Id*. at 51.  Plaintiff did not

appeal the decision to the ARB thereafter.  (Doc. 57-2).

### Grievance #3: July 13, 2022

On July 13, 2022, Plaintiff submitted a grievance directly to the ARB regarding the denial

of his medications out of retaliation for filing a lawsuit against Lieutenant Ebers.  (Doc. 57-1, pp.

36-37; Doc. 61-1, pp. 26-30).  Plaintiff named Defendant Giacomo in this grievance.  (Doc. 57-1,

p. 36).  The ARB received this grievance on July 22, 2022 and returned it to Plaintiff without

reviewing it because it failed to comply with DR 504(F).  *Id*. at 35.  Specifically, Plaintiff failed

to provide the counselor response, the grievance officer response, or the CAO recommendation.

*Id*.  After the ARB returned the grievance to Plaintiff, he submitted the grievance and ARB return

of correspondence to the counselor.  (Doc. 57-2, pp. 59-61).  HCU Administrator Crain responded

by stating that Plaintiff received all medications on July 13, 2022.  *Id*. at 62.  The grievance officer

recommended mooting this grievance.  *Id*. at 57-58.  The CAO concurred.  *Id*. at 57.  Plaintiff did

not appeal this decision to the ARB.  (Doc. 57-1).

### Grievance #4: October 3, 2022

On October 3, 2022, Plaintiff submitted a grievance directly to the ARB regarding the

denial of his medications in retaliation for filing a lawsuit against Lieutenant Ebers.  (Doc. 57-1,

pp. 23-25; Doc. 61-1, pp. 14-16).  Plaintiff indicated that he spoke with Defendant Ramsey, but

the officer would not tell him why Ebers was denying the medication.  Defendant Lambert also

denied it.  The ARB received this grievance on October 12, 2022 and returned it to Plaintiff without

reviewing it because it failed to comply with DR 504(F).  Plaintiff failed to provide the counselor response, the grievance officer response, or the CAO recommendation.  *Id.*

### Grievance #5: November 3, 2022

On November 3, 2022, Plaintiff submitted a grievance directly to the ARB regarding the denial of his medications and retaliation for filing a lawsuit against Lieutenant Ebers.  (Doc. 57-1, pp. 20-21; Doc. 61-1, pp. 11-12).  Plaintiff stated that he had been writing grievances since July about Defendants Ebers and Rhoades denying him medication, which Ebers told him was because of a lawsuit he filed.  Plaintiff added that ever since he wrote the first grievance, Rhoades had been writing him "bogus" tickets.  *Id.*  The ARB received the grievance on November 21, 2022 and returned it to Plaintiff without reviewing it because it failed to comply with DR 504(F).  (Doc. 57-1, p. 19).  Plaintiff failed to provide the grievance with the counselor response, the grievance officer response, or the CAO recommendation.  *Id.*

### DISCUSSION

Summary judgment is proper if the pleadings, affidavits, depositions, admissions, and answers to interrogatories show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  If a defendant meets his or her burden of showing that there is an absence of evidence to support the plaintiff's claim, Plaintiff must demonstrate by affidavit, depositions, admissions, and answers to interrogatories that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner.  *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Generally, the district court's role on summary judgment is not to weigh evidence or judge witness credibility.  However, a different standard applies when deciding a motion for summary

6

judgment on the issue of exhaustion.  *Pavey v. Conley*, 544 F.3d 739, 739-41 (7th Cir. 2008).

Under those circumstances, courts conduct an evidentiary hearing and resolve contested issues of

fact regarding a prisoner's efforts to exhaust.  *See Pavey*, 544 F.3d at 742.  After hearing evidence,

finding facts, and determining credibility, the court must decide whether to allow a claim to

proceed or dismiss it for failure to exhaust.  *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir.

2018) (citing *Pavey*, 544 F.3d at 742).  No hearing is required if no material facts are disputed.

*See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

Under the PLRA, a prisoner may not bring a lawsuit concerning prison conditions unless

and until he has exhausted all available administrative remedies.  42 U.S.C. § 1997e(a); *Pavey*,

544 F.3d at 740.  "The exhaustion requirement is an affirmative defense, which the defendants

bear the burden of proving."  *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).  For a prisoner

to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in

the place, and at the time, the prison's administrative rules require."  *Pozo v. McCaughtry*, 286

F.3d 1022, 1025 (7th Cir. 2002).  "[A] prisoner who does not properly take each step within the

administrative process has failed to exhaust state remedies."  *Id.* at 1024.  Exhaustion must occur

before the suit is filed.  *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff was required to

follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE

§ 504.800, *et seq*. (2017).  The regulations require the inmate to file his grievance with his

counselor or grievance officer[5] within 60 days of the incident, occurrence, or problem giving rise

to the grievance.  20 ILL. ADMIN. CODE § 504.810(a).  If the complaint is not resolved, the

grievance must be submitted to a grievance officer, who reports his or her findings and

---

[5] Grievances about disciplinary matters should be addressed directly to the Grievance Officer, and all other grievances should be sent to the counselor first.  *Id*.

recommendations in writing to the Chief Administrative Officer (CAO) within 2 months after receipt of the grievance, whenever feasible.  20 ILL. ADMIN. CODE § 504.830(e).  The CAO then provides the inmate with a written decision on the grievance.  *Id.*  If the inmate is not satisfied with the CAO's response, he files an appeal with the IDOC Director through the ARB within 30 days of the date of the CAO's decision.  20 ILL. ADMIN. CODE § 504.850(a).  The inmate must attach copies of the Grievance Officer's report and CAO's decision to his appeal.  *Id*.  The ARB then considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within 6 months after receipt of the matter, when reasonably feasible under the circumstances.[6]  20 ILL. ADMIN. CODE § 504.850(d), (e).

While the Prison Litigation Reform Act requires prisoners to exhaust all available remedies before bringing suit, an inmate must only exhaust administrative remedies that are *available*.  *Ross v. Blake*, 578 U.S. 632, 642-44 (2016).  A prisoner is not required to exhaust remedies that are unavailable to him.  *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

A grievance process is considered unavailable in three situations.  First, an administrative procedure is unavailable when it operates as a simple dead end, such as when "officers are unable or consistently unwilling to provide any relief."  *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001).  Second, an administrative remedies process may be so opaque that "it becomes, practically speaking, incapable of use."  *Ross*, 578 U.S. at 643.  Third, the process may become unavailable when prison officials thwart inmates from using the grievance process through "machination, misrepresentation, or intimidation."  *Id*.  All three situations render the administrative grievance process unavailable such that § 1997e(a) poses no bar to litigation.

---

[6] An inmate facing an emergency can use an alternative procedure to file his emergency grievance by following the steps set forth in 20 ILL. ADMIN. CODE § 504.840.

Plaintiff filed Grievances 1-5 directly with the ARB before taking all of the steps necessary to exhaust each grievance at the institutional level.  The ARB rejected each one because he did not include evidence of his efforts to exhaust at the prison, in the form of a counselor response, grievance officer response, or CAO recommendation.  Thus, Plaintiff clearly failed to strictly comply with the process outlined in the Illinois Administrative Code for these five grievances. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017).  However, Plaintiff maintains that Menard's grievance process was unavailable to him.

Plaintiff asserts that when he submitted grievances at the prison, he heard nothing.  He received no receipt, no response, and no returned copy.  He also received no relief.  Plaintiff explains that this is why he began filing each grievance with the prison and ARB at the same time. When the ARB returned a grievance, he re-submitted it at the institution with the ARB's correspondence and still received no response.  Evidence of Plaintiff's declaration and the grievance documents in the record evidence his frustrated efforts to exhaust his administrative remedies.  *See, e.g.*, Doc. 63, p. 17 (Plaintiff comments in grievance to ARB dated July 22, 2022; "[T]his is the only grievance that I have had Menard's staff to process, that I wrote, since my arrival October 14, 202[1]."); Doc. 63, p. 15 (Plaintiff states in grievance sent to ARB on October 5, 2022: "I'm sending this grievance straight to you because Menard Correctional Staff are not allowing my grievances to be properly processed and I am in dire need of a[n] answer and investigation to prevent this lieutenant from retaliating against me by not allowing me to receive my pain medication."); Doc. 63, p. 21 (Plaintiff states in grievance dated November 7, 2022: "I'm writing because I'm having problems getting certain grievances processed here at Menard."). Plaintiff further asserts that Grievances 1-5 were not the only grievances he submitted.  (Docs. 63, 67).  He filed many more that are unaccounted for here.  This includes grievances against each

defendant for the misconduct alleged in Counts 1 and 2.  However, he did not receive receipts, responses, or returned copies, and he did not retain copies of them.  These grievances disappeared.

A grievance process is unavailable "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d at 809 (concluding that inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).  Questions surrounding the availability of the administrative remedies process create genuine factual disputes that preclude summary judgment for the defendants.  *See, e.g., Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024); *Smith v. Foster*, 2024 WL 4988362, at *2 (7th Cir. Dec. 5, 2024) (finding that inmate's sworn statement that he submitted a grievance was sufficient to create a genuine dispute of fact about exhaustion).  Accordingly, both motions for summary judgment will be denied.

### DISPOSITION

For the foregoing reasons, the motions for summary judgment for failure to exhaust administrative remedies (Doc. 56 and 61) are **DENIED**.

On or before **April 3, 2025,** Defendants must file a motion requesting a *Pavey* hearing, if they wish to pursue the affirmative defense, or a motion withdrawing the affirmative defense of exhaustion, if they do not wish to pursue the affirmative defense.  Failure to respond to this Order will be deemed a waiver of the affirmative defense, and this matter will proceed to merits discovery once the issue of exhaustion is resolved as to all defendants.

**IT IS SO ORDERED.**

**DATED:    March 20, 2025**          *s/ Staci M. Yandle*
                                     **STACI M. YANDLE**
                                     **United States District Judge**