## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENTES WEST,                                    )
                                                )
                    Plaintiff,                  )
                                                )
        vs.                                     )       Case No. 23-cv-00224-SMY-MAB
                                                )
SCOTT EBERS,                                    )
ROBERT W. RHOADES,                              )
ZACKARY CONNOR,                                 )
RYAN RAMSEY,                                     )
KEVIN TILLEY,                                   )
SYLVESTER LAMBERT,                              )
JESSICA ARMBRUSTER,                             )
MARK HANKS,                                     )
MORGAN GIACOMO,                                 )
and WARDEN OF MENARD                            )
CORRECTIONAL CENTER,                            )
                                                )
                    Defendants.                 )

## REPORT AND RECOMMENDATION

**BEATTY, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Mark A. Beatty by United States District Staci M. Yandle pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on a Joint Motion for *Pavey* Hearing on the issue of exhaustion filed by Defendants Scott Ebers, Robert W. Rhoades, Zackary Connor, Ryan Ramsey, Kevin Tilley, Sylvester Lambert, Jessica Armbruster, Mark Hanks, and Morgan Giacomo (Doc. 72). For the reasons set forth below, this Court **RECOMMENDS** that the District Court **GRANT** the Joint Motion for *Pavey* Hearing, **ADOPT** the following findings of fact and conclusions of law, and **FIND** that the grievance process was unavailable to Plaintiff.

## Background

Plaintiff Kentes West filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from retaliation by staff at Menard Correctional Center. In the Amended Complaint, Plaintiff claims that prison officials retaliated against him for filing a past lawsuit against Lieutenant Ebers by denying him "crush and float" medication for nerve pain unless he submitted to tight cuffing (Docs. 19, 25). When Plaintiff complained that the painful cuffs caused him to decline medication in July 2022, Lieutenant Ebers said he should be glad there was nothing more to complain about given that Plaintiff sued him (*see* Doc. 25 at p 2). Plaintiff requested a different medication time to avoid Lieutenant Ebers, but his request was denied (*Id.*). From July 12-14, 2022, Lieutenant Ebers ordered the guards to cuff Plaintiff for all medication (*Id.*). After that, Plaintiff only received medication when Lieutenant Ebers was not working, and he was eventually denied medication when he offered to wear handcuffs (*Id.*). Nurse Morgan Giacomo became so accustomed to Defendants Ebers, Rhoades, Connor, Ramsey, Tilley, and Lambert's refusal to give Plaintiff medication that she stopped packing it (*Id.* at p. 3). Defendants Armbruster, Hanks, and Rhoades issued him false disciplinary tickets in retaliation for filing grievances and complaints against staff (*Id.*).

The Amended Complaint survived screening under 28 U.S.C. § 1915A on two claims: Count 1 - a First Amendment claim against Defendants Ebers, Rhoades, Connor, Ramsey, Tilley, Lambert, and Morgan for interfering with Plaintiff's medication from July to October 2022 in retaliation for suing Ebers; and Count 2 – a First Amendment claim against Defendants Armbruster, Hanks, and Rhoades for issuing Plaintiff disciplinary

tickets in September and October 2022 in retaliation for filing grievances against staff (*Id*. at pp. 4-9).

**<u>Motions for Summary Judgment</u>**

Defendants moved for summary judgment based on Plaintiff's alleged failure to exhaust his administrative remedies before filing this suit[1] (Docs. 56, 61). They identified grievances relevant to this matter dated July 11, 2022, July 12, 2022, July 13, 2022, and October 3, 2022, and argued that Plaintiff submitted each one directly to the Administrative Review Board (ARB) without first using the institutional grievance process to exhaust his administrative remedies at the prison (*see generally Id*.). Plaintiff countered that the institutional grievance process was unavailable because Menard officials routinely failed to respond to certain types of grievances, including those about staff misconduct (Docs. 63, 67, 68). To demonstrate his good faith effort to exhaust remedies before filing suit, Plaintiff says he submitted each grievance at the institution and sent a copy to the ARB simultaneously (*Id*.).

The Court denied summary judgment on the papers but gave the parties an opportunity to request a *Pavey* hearing to resolve factual disputes surrounding the availability of administrative remedies at Menard (Doc. 71). *See also Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Defendants requested a hearing (Doc. 72) and the matter was then referred to the undersigned to conduct a *Pavey* hearing (*see* Doc. 73).

---

[1] The Warden of Menard Correctional Center is named in an official capacity and did not participate in summary judgment briefing.

### A.  Relevant Procedural Background

This Court scheduled a *Pavey* hearing for June 30, 2025 (*see* Doc. 74). Less than two weeks before the scheduled *Pavey* hearing, the United States Supreme Court decided *Perttu v. Richards*, 605 U.S. 460 (June 18, 2025). Pertinently, the Supreme Court's opinion in *Perttu* appeared to foreclose the use of *Pavey* hearings in a limited set of factual situations. However, because of the timing of the *Perttu* decision and the significant logistical challenges that go into scheduling a *Pavey* hearing[2], the Court opted to leave the *Pavey* hearing as scheduled and discuss a plan with the parties. At the outset of the hearing, the Court raised the *Perttu* decision with Plaintiff and the attorneys for the various Defendants (both IDOC employees and Wexford employees are named as Defendants). Given the recency of *Perttu*, all parties, understandably, were not prepared to have a detailed discussion on *Perttu* and its impact, if any, on the instant exhaustion dispute. Accordingly, the Court determined that the best course of action would be to conduct the evidentiary hearing as scheduled since all parties and witnesses were present and ready to proceed (*see* Doc. 78). Thereafter, the Court took the matter under advisement and allowed the parties additional time to assess the *Perttu* decision and request permission to file supplemental briefing (Docs. 78, 79). Ultimately, after receiving timely requests to supplement from Defendants (Docs. 81, 82), the Court allowed supplemental briefing on the impact of *Perttu*, if any, on the instant exhaustion dispute

---

[2] The Court had issued a video writ to Menard Correctional Center, which requires Menard to make video conference space available for Plaintiff so that he could appear at the hearing and participate (Doc. 75). Additionally, the Defendant had arranged to have two witnesses available to testify at the *Pavey* hearing (Doc. 77).

(Doc. 83). The Court also decided to recruit counsel to represent Plaintiff in this case and assist him in this supplemental briefing (Doc. 86).

### B. *Perttu v. Richards* **and its impact on the instant exhaustion dispute**

The parties all filed Supplemental *Perttu* Briefs as directed (Docs. 88, 89, 93). Accordingly, the first issue the Court must address before touching on any of the testimony from the *Pavey* hearing is the impact, if any, the *Perttu* decision has on this case. In *Perttu*, the Supreme Court held that a jury trial is required when PLRA exhaustion disputes are intertwined with factual disputes on the merits of a claim covered by the Seventh Amendment's right to a jury trial. 605 U.S. at 479. In other words, the *Perttu* decision forecloses the use of *Pavey* hearings to resolve factual disputes surrounding exhaustion when those factual disputes are entangled or intertwined with the merits of the ultimate claim or claims. *Id.* However, this does not foreclose *Pavey* hearings to resolve factual disputes surrounding exhaustion when those disputes are not intertwined with the ultimate merits of the claim or claims.[3]

After carefully considering the parties' supplemental briefs, the Court believes this case is distinguishable from *Perttu* and the factual disputes surrounding exhaustion are *not* intertwined with the merits of Plaintiff's claims. Plaintiff's argument is that his administrative remedies were rendered unavailable by the prison's general practice of providing no response to certain types of grievances, including those complaining of staff misconduct. Plaintiff's First Amendment claim against Defendants Ebers, Rhoades,

---

[3] The Court expressed no opinion on whether a jury trial is required for all PLRA exhaustion disputes, including those involving no intertwinement. *Id.* at 468.

Connor, Ramsey, Tilley, Lambert, and Morgan arise from their alleged use of tight handcuffs to interfere with his medications in retaliation for a past lawsuit filed against Lieutenant Ebers (Count 1). The First Amendment claim against Defendants Armbruster, Hanks, and Rhoades arises from their alleged issuance of false disciplinary tickets in retaliation for his miscellaneous grievances and complaints about prison staff (Count 2). Plaintiff's claims do not involve any assertion that Defendants interfered with the grievance process to prevent him from grieving about his tight cuffs and medication (Count 1) or his disciplinary tickets (Count 2). Accordingly, the factual disputes surrounding the availability of administrative remedies can be resolved without reaching the merits of either retaliation claim.

Moreover, different witnesses are needed to address exhaustion and the merits of these claims. The exhaustion issue involves Plaintiff, grievance counselor(s), grievance officer(s), and/or ARB staff. Meanwhile, addressing the merits of Plaintiff's underlying claims will likely involve testimony from Plaintiff and Defendants, who consist of the prison's nurses, guards, and internal affairs officers. Furthermore, Plaintiff's testimony at the *Pavey* hearing covered very different content from what the Court would expect for his testimony at a trial on the merits. And, with the exception of Plaintiff, the witnesses who testified at the *Pavey* hearing will almost certainly be entirely different from the witness that may be offered at trial.

Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Joint Motion for *Pavey* Hearing (Doc. 72) and consider the undersigned's findings of fact and conclusions of law with respect to the *Pavey* hearing, because this exhaustion dispute is

not intertwined with the ultimate merits of Plaintiff's claims.

## The *Pavey* Hearing

At the *Pavey* hearing on June 30, 2025, Attorney Evan CreelGould appeared for the Illinois Department of Corrections (IDOC) Defendants, Attorney Tim Dugan appeared for Nurse Giacomo, and Plaintiff appeared *pro se* by video. Defendants presented testimony from two witnesses, including Grievance Officer Jeffrey Olson and ARB Chairperson Ryan Nothnagle. Plaintiff cross-examined both witnesses and offered his own testimony. The Court took the matter under advisement while the parties filed Supplemental *Perttu* Briefs (*see* Doc. 83). Having now recommended that this case does not present any *Perttu* intertwinement concerns, the Court turns to the issue of whether administrative remedies were available to Plaintiff at Menard.

### A. Findings of Fact

According to Grievance Officer Olson and ARB Chairperson Nothnagle, every inmate at Menard receives an orientation manual outlining the prison's grievance process (Doc. 90, p. 13, ll. 21-23). This process requires an inmate to complete the following steps to exhaust a grievance about his conditions of confinement[4] (*Id*. at pp. 11-13). The inmate first files a grievance with his counselor. If this does not resolve the matter, the inmate submits the grievance to a Grievance Officer, who reports findings and recommendations in writing to the Chief Administrative Officer (Warden). The Warden then provides the inmate with a written decision. If the issue is not resolved, the inmate appeals the decision

---

[4] These steps are also set forth at 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017).

to the IDOC Director through the ARB. Along with the appeal, the inmate is required to

attach copies of the Grievance Officer's report and Warden's decision. The ARB considers

the matter and submits a written report of its findings and recommendations to the IDOC

Director for a final determination (*Id*).

An inmate facing an emergency uses a different route to exhaust his remedies

(Doc. 90, p. 15, ll. 17-25). Emergency grievances are sent directly to the Warden. If deemed

an emergency, the Warden expedites the matter. If deemed a non-emergency, the Warden

returns the grievance to the inmate for re-filing at each step of the grievance process[5] (*Id.*).

Filing a grievance directly with the ARB is not considered proper procedure[6]

(Doc. 90, pp. 24-25, 33). Submitting an appeal to the ARB without including the Grievance

Officer's response and Warden's decision is also improper. When the ARB receives an

improper grievance or appeal, the ARB generally checks a box indicating the grievance

is noncompliant and returns it to the inmate for re-filing through normal channels (*Id.*).

Plaintiff testified that he was very familiar with Menard's grievance process in

2022 (Doc. 90, p. 41, ll. 18-22). He had been incarcerated for 30 years and used the process

regularly. Over time, Plaintiff learned to expect no institutional response to certain types

of grievances, including those about staff misconduct as in this case (*Id.* at pp. 39-40).

When he filed said grievances, Plaintiff used a different approach to document his efforts

to exhaust. Specifically, Plaintiff filed each grievance in the prison's grievance box and

---

[5] Beginning September 1, 2023, all non-emergency grievances were *automatically* sent back through the normal grievance channels for processing (Doc. 90, p. 27, ll. 19-25; p. 28, ll. 1-3).

[6] There are exceptions for grievances about certain issues arising at another facility (Doc. 90, pp. 26, 33). None of these exceptions applied to Plaintiff.

also sent a handwritten copy to the ARB (*Id*. at p. 40, ll. 17). In 2022, the metal grievance box was easily breached (*Id*. at pp. 41-42). Grievances could be extracted from the box using a pen. Consequently, inmate grievances regularly went missing. After inmates complained, the metal box was eventually replaced with a wooden box (*Id*. at p. 42). When sending his grievances directly to the ARB, Plaintiff described his difficulties getting institutional level responses, and he requested the ARB's help (*Id*.). Plaintiff knew this was not the proper grievance procedure, but this was also the only way to document his efforts to exhaust (*Id*. at ll. 19-20).

Grievance Officer Olson admits that staffing and resource shortages caused delays in processing grievances at Menard in 2022 (Doc. 90, p. 17, ll. 24-25; p. 18, ll. 5-9). Inmates with medical complaints had to wait 1- to 2- years to receive grievance responses (*Id*.). To check on the status of a grievance, Olson explained that inmates could file a "kite" with the grievance office (*Id*. at p. 17, ll. 14-22). Making an inquiry did not reduce the grievance response time, but it helped inmates determine whether their grievances were lost (*Id*.).

The grievances at issue were all filed about staff misconduct in 2022 (Doc. 90, p. 23, ll. 20-25). Plaintiff did not receive an institutional response to any, and he believed each grievance was lost (*Id*. at pp. 44-46). The ARB rejected each grievance as improperly filed. When he commenced this lawsuit, Plaintiff was surprised that the IDOC could produce receipts or responses for the grievances dated July 11, July 12, July 13, and October 3, 2022 (*Id*. at p. 41, ll. 8-14; pp. 47-48). He thought the prison discarded, destroyed, misplaced, or lost them (*Id*. at pp. 44, 47-48). Plaintiff points out that each

institutional grievance response lacked his signature because he never signed a response indicating he received it (*Id*. at p. 53).

**B.  Conclusions of Law**

The Prison Litigation Reform Act ("PLRA") requires inmates who have complaints about prison conditions to exhaust all available administrative remedies before bringing suit in federal court. 42 U.S.C. § 1997e(a). When a motion for summary judgment on the issue of exhaustion presents material factual disputes and no *Perttu* intertwinement problems, the Court conducts an evidentiary hearing to resolve contested issues of fact concerning a prisoner's efforts to exhaust, *see Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the Court must decide whether to allow a claim to proceed or to dismiss it for failure to exhaust. *See id.*; *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To properly exhaust administrative remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Although the Seventh Circuit requires strict adherence to the exhaustion requirement, an inmate is required to exhaust only those administrative remedies that are available to the inmate. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prison

officials cannot utilize the exhaustion process to unfairly prejudice inmates. Grievance procedures are unavailable to prisoners where prison officials do not respond to properly filed inmate grievances or use affirmative misconduct to prevent prisoners from pursuing administrative remedies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citing *Dole*, 438 F.3d at 809).

The exhaustion requirement is an affirmative defense, which Defendants bear the burden of proving. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Banks v. Patton*, 743 F. Appx. 690, 695 (7th Cir. 2018). When considering availability, Defendants bear the burden of showing "beyond dispute" that Plaintiff's administrative remedies were available to him. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). This unavailability exception to the exhaustion requirement is nevertheless, "meant to be narrow." *Wallace v. Baldwin*, 55 F.4th 535, 543 (7th Cir. 2022).

Here, Defendants have not met their burden of showing "beyond dispute" that Plaintiff's administrative remedies were available to him. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). Admittedly, it is undisputed that Plaintiff failed to comply with the grievance procedure because he filed each grievance at the prison and simultaneously sent a copy to the ARB. As a result, the ARB rejected each copied grievance for failing to include a counselor's response, grievance officer's response, or CAO's decision. Thus, Plaintiff did not comply with the process outlined in the Illinois Administrative Code for these grievances. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017).

However, Plaintiff presented credible testimony that the institutional grievance process was unavailable. Plaintiff testified that over the course of 30 years in prison, he

became accustomed to receiving no responses to grievances addressing certain topics, including staff misconduct (Doc. 90 at pp. 39-40). This is why he adopted the practice of both placing his grievances in the grievance box and sending a copy to the ARB (*Id.*). In addition, the metal grievance box was not secure and was frequently blamed for grievances that went missing (*Id.* at pp. 41-42). For those grievances that reached grievance officials, Grievance Officer Olson admits that grievance responses were delayed up to 1 or 2 years (*Id.* at pp. 20-21).

The grievances at issue were filed in 2022, at a time when Grievance Officer Olson described shortages in staff and resources that caused significant delays in grievance processing at Menard. Plaintiff testified that he received no receipt, no response, and no returned copy of his grievances. He was surprised when the IDOC produced copies of receipts and responses in conjunction with this lawsuit. However, Plaintiff credibly claims that he did not receive these receipts or responses before filing the lawsuit, and that is why the responses do not bear his signature. Ultimately, based on the evidence and arguments proffered by the parties related to Plaintiff's grievances filed at the institutional level, the Court finds that Plaintiff's administrative remedies were unavailable at Menard. Therefore, Plaintiff was not required to exhaust the institutional grievance process before filing this lawsuit.

The undersigned **RECOMMENDS** that the District Court **ADOPT** the findings of fact and conclusions of law and **FIND** that the grievance process was unavailable to Plaintiff.

### Recommendation

Based on the foregoing, it is **RECOMMENDED** that the District Court **GRANT** the Joint Motion for *Pavey* Hearing (Doc. 72), **ADOPT** the findings of fact and conclusions of law, **FIND** that the grievance process was unavailable to Plaintiff, and **ALLOW** Counts 1 and 2 to proceed.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Report and Recommendation within 14 days of service (*see* attached Notice). The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).

**DATED: February 9, 2026**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**